ODOM, Justice.
 

 J. R. Johnston sold 245 acres of land to C. C. Lawrence on November 26, 1935. The
 
 *702
 
 consideration for the sale was $1,537.67, the balance due on a mortgage in favor of the Federal Land Bank, which mortgage was assumed by the purchaser, plus taxes amounting to $82.98. Mr. Johnston died in October, 1937, leaving no forced heirs. He left a last will by which he bequeathed to certain of his relatives all the property of which he died possessed. The present suit was brought by the executor of his will and by the legatees named therein, against C. C. Lawrence, the purchaser of the property, to set the sale aside on the ground of lesion beyond moiety. Plaintiffs alleged that the property involved was an immovable and that the price given was, at the time of the sale, less than one-half its value; that, whereas the consideration for the salé was only $1,620.65, or about $7 per acre, the property was worth not less than $25 per acre, or about $6,000.
 

 Defendant in his answer admitted that he had purchased the property from Mr. Johnston for $1,620.65, and alleged that this was a fair consideration for the sale at that time. He especially denied that the property was worth more than twice as much as he had paid for it. He alleged that a fair valuation of the property at the time the sale was made was some $7 to $10 per acre; that the property was in a run-down condition; that the houses thereon were nothing more than shacks, hardly habitable; that the portion of the land which had been cultivated to rice was foul, infested with red rice, and was of a poor, low-grade character, and that the property was not desirable, and that there was no market for land of that character at that time for a consideration exceeding that which he had paid. He asked that the contract of sale be upheld.
 

 In the alternative he prayed that, in case the court should hold that the sale should be set aside, he be given judgment for the amount which he had expended for the improvement of the property since his acquisition of it, which amount was $1,395.00.
 

 Defendant in limine excepted to plaintiffs’ suit on the ground that their petition set out no cause or right of action. This exception was grounded upon the proposition that the executor and the legatees were without authority under the law to attack a sale executed by the deceased vendor, the legatees named in the will not being forced heirs and the only functions of the executor being to see that the will was executed according to its terms.
 

 The trial judge stated in his written opinion that, on the day set for the trial, it was agreed that the case should be taken up on its merits with reservation of the defendant’s rights under the exception, and that the court might dispose of the exception at the time it passed upon the merits of the case.
 

 The court discussed the exception but did not pass upon it. There was judgment in favor of defendant on the merits, and plaintiffs appealed.
 

 We do not find it necessary to discuss the exception filed by defendant. We concur in the view expressed by the trial judge that plaintiffs utterly failed to make out their case on the merits. We are indebted to Judge Hood for a written opinion in which he discussed in detail and at considerable
 
 *704
 
 length the testimony of'each and every witness called by the plaintiffs, and of each of the witnesses called by defendant, except some three or four whom he mentioned but whose testimony he did not discuss in detail. We have read the testimony and approve his findings of the facts. As to those witnesses who were mentioned by the judge and whose testimony he did not discuss, we find that they stated that Mr. Johnston had offered to sell this property to them about the time he made the sale to the defendant, and that they did not purchase it for the reason that they were not willing to pay as much for the property as the defendant paid.
 

 That portion of Judge Hood’s written opinion relating to the merits of the case, which we adopt and make our own, is as follows:
 

 “On its merits this suit is based on Articles 1860 and 1861 of the Civil Code, which provide as follows:
 

 “Article 1860: ‘Lesion is the injury suffered by one who does not receive a full equivalent for what he gives in a commutative contract. The remedy given for this injury, is founded on its being the effect of implied error or imposition; for, in every commutative contract, equivalents are supposed to be given and received.’
 

 “Article 1861:
 

 “ ‘The law, however, will not release a person of full agé, and who is under no incapacity, against the effect of his voluntary contracts, on account of such implied error or imposition, except in the two following cases:
 

 ■« * *
 
 *
 

 “ ‘2. In sales of immovable property, the vendor may be relieved, if the price given is less than one-half of the value of the thing sold; but the sale can not be invalidated for lesion to the injury of the purchaser.’
 

 “In the first place it may be stated that under our jurisprudence in order to maintain an action for lesion beyond moiety the evidence should be certain, and should not be left to conjecture. This rule was enunciated as early as 1852 in the case of Demaret v. Hawkins, 8 La.Ann. 483, in which case the court said: ‘The right to rescind a sale for lesion beyond moiety, is the only restraint upon the liberty of the citizen to bind himself and his property according to the dictates of his own judgment, and the evidence relied on to establish that right, should be peculiarly strong and conclusive.’
 

 “In this sale which is sought to be am nulled, and which is dated November 26, |1935, the consideration is expressed as ‘being the assumption of the balance due of a certain Federal Land Bank mortgage, original sum being $1,700.00’, and also ‘taxes for 1935 to be paid by Mr. Lawrence’.
 

 “The evidence shows that .the taxes for the year 1935 amounted to the sum of $82.99, and that the balance at that time due under the Federal Land Bank mortgage was $1,-537.67, making a total of $1,620.66.
 

 “Evidence over the objection of counsel for the plaintiffs was introduced to show that an additional sum of $200 was paid to the vendor as a part of the consideration.
 

 “In order, therefore, for the plaintiffs to maintain this action, it is necessary that they
 
 *706
 
 show with evidence that is peculiarly strong and conclusive that the value of this land on November 26, 1935, was in excess of $3,-241.32. The evidence shows that there were 245 acres in this farm. Since practically all the evidence places the value of this land as so much per acre, the proof must show that the value of the land was in excess of $13.23 per acre.
 

 “The contention of the plaintiffs on the value of this land as of November 26, 1935, is supported, first by the testimony of G. W. Johnston, a brother of the deceased, one of the plaintiffs, and a legatee under the will, and who lives in Sulphur. This witness testified that the land was worth $20 per acre, but knows of no sales in that community and has never lived in that community.
 

 “R. L. Abbott, who resides in Lake Charles and who is the executor of the will, placed the value at $20 per acre, but has had no intimate acquaintance with this particular land, nor does he know of any sales in that community, the witness being an expert on marketing and grading rice.
 

 “W. C. McNabb, who is in the hardware business in the Town of Kinder, testified that he once owned the land, having purchased it for $12.50 per acre in 1916 or 1917, and that he sold it on July 9, 1918, for $15 per acre.
 

 “John Fossett, another witness for the plaintiff, testified that he lives several miles south of this tract of land and has never lived in the vicinity of this land, but thinks the land is worth $20 per acre.
 

 “Marian McNabb, another witness for the plaintiffs, testified that he resided on the land some six or seven years; that he moved off of the land in January of 1935; that he thinks the land is worth $15 per acre; that he acquired the land in the year 1928 at a sheriff’s sale for $1,900, being $200 cash and the assumption of a $1,700 Federal Land Bank mortgage; that he and his son sold this land to Johnston, the deceased, in the year 1931 for the assumption of the Federal Land Bank mortgage and the cancellation of a debt of $2,900 which they owed Johnston and which they could not . pay and had no property out of which Johnston could collect his debt.
 

 “On the other hand the defendants introduced the testimony of the following witnesses :
 

 “W. S. Kingrey, a resident of Kinder, and who is a large cattle man and landowner and a man of considerable business, places the value of this tract of land at $8 per acre; that he sold some land in 1930 two miles north of this land for $5 per acre; that he sold some in 1931 and some in 1932 about six miles West for $4.50 and $5 per acre.
 

 “Winn J. Unkel, president of the Kinder Canal Company, testified that he was familiar with the land; that he has had large experiences in rice lands in that community; that he places the value of this land at $6 or $7 per acre.
 

 “George Deaton, who is land agent for the Powell Lumber Company, and also for the King Company, and who has had large experiences in lands in that section, testified that $10 per acre would be full value for this land.
 

 “Henry Unkel, who resides in Kinder, testified that he is a farmer and that he
 
 *708
 
 Has been acquainted with this land since 1916; that this is not a good rice farm; that he places the value between $8 and $10 as a full value for this land.
 

 “Clyde 'Chachere, a witness for the defendant, testified that he lives on an adjoining tract of land and has lived there for some twelve or fifteen years; that he owns 40 acres adjoining this land which he purchased in 1932 or 1933 for $350, which land he purchased from his mother; that his 40-acre tract is about the same type of land as the land involved in this suit; that it lies just across the paved highway. This witness places the value of this land at $8 or $10 per acre. This witness further testified that he was offered this land for $1,900 and would-not consider it.
 

 “The defendant himself testified that the deceased approached him, driving to his home in Welsh to see him with a view of selling to him; that he, the defendant, drove to Kinder then and looked at the farm and told the deceased he did not want it, and that the 'deceased then returned with him to Kinder and ‘begged’ him to take it, and which he finally did.
 

 “In addition to the evidence as to the value of this land the defendant placed on the stand several witnesses who testified that the deceased had offered to sell the farm to them at the price and on the terms offered to the defendant, and that they declined to purchase for the reason that in their opinion it would not be a profitable investment.
 

 “The evidence further shows that W. C.McNabb purchased this property in 1916 for $12.50 per acre, and in July of 1918 sold for $15 per acre. This sale was made during the war period when all property had highly inflated values.
 

 “It is true that Marian McNabb sold this property to the deceased in the year 1931 for the assumption of the $1,700 Federal Land Bank mortgage and the cancellation of a debt of $2,900 which McNabb owed the deceased, but it was shown that McNabb had no property, was wholly insolvent and could not pay the debt.
 

 “It was further shown that while the deceased died in the month of October, 1937, or nearly two years after this sale; during the last months of his life was in a very poor state of health; yet that he was a shrewd business man and had accumulated a considerable estate.
 

 “It was further shown that this sale took place at a time of business inaction and when farm values generally were low; that this particular farm as a whole was not a desirable rice farm, while small portions of the farm did produce a fair yield, and was not located strictly in the rice growing section of Southwest Louisiana.
 

 “Considering the evidence as a whole in this case, this court is clearly of the opinion that the plaintiffs have failed to carry the burden of proof, and on the merits of the case the plaintiffs’ demands must be rejected.
 

 “The court further finds that the defendant is entitled to a decree correcting a clerical error in the description of the property as recited in the deed to defendant from the deceased.”
 

 • The judgment appealed from is affirmed, appellants to pay costs.